### ALEXANDER LEMOINE *v.* JULIEN GAUTON.

An action to recover damages for violating a trade mark, will lie, although, at the time the article was sold by the defendant, the plaintiff employed another mark, and had ceased to use the one imitated.

The wrong and injury to the plaintiff, consist in the sale of an article falsely purporting and declared to be of his manufacture, whether the deceit be perpetrated by counterfeiting his present trade mark, or one formerly used by him.

The credit and reputation which a man acquires by his care or skill in the manufacture of a particular article, is a species of property which the law recognizes and protects; and when an article, not of his manufacture, is sold with the mark or symbol affixed, which he has devised to designate his own goods, an injury results to him, in the effect upon the reputation of his goods, provided the article so sold is inferior thereto, and in the diminution of the demand for his goods, in case such article is equal or superior in quality.

Whether the owner of a trade mark has a right of action for its violation, in reference to a specific article which he has himself purchased through an authorized agent; *quere?*

His recovery, in case an action could, under such circumstances, be sustained, would be limited to nominal damages.

Where, before the trial, a witness had sworn to a deposition drawn up in the English language, with which he was imperfectly acquainted, and upon his examination in court, in his own tongue, through an interpreter, the fact was elicited, with a view of impairing his credibility, that he did not positively know the statements sworn in the deposition to be true "of his own knowledge;" *held,* that it was competent to show, by the witness, that he did not understand the full import of the language used in the deposition, and that he intended thereby, simply that the facts sworn to were true according to his conviction, founded upon circumstances which he mentioned. The explanation may go to the jury for what it is worth, on the general question of his credibility.

THIS action was brought to recover damages for the infringement of a trade mark devised by the plaintiff, who was a manufacturer of calf skin leather, in France.

On the trial, which was conducted before INGRAHAM, FIRST J., and a jury, it appeared in evidence, that, about a year before the sales by the defendant of skins differently manufactured, but bearing the plaintiff's trade mark, a new mark

had been adopted, and the use of the one in question wholly discontinued by the inventor, Lemoine.

One of the sales complained of, was made to the plaintiff himself, through an agent residing in New York and authorized to purchase.

The complaint in the action was verified, by the plaintiff's agent above mentioned, in an extended deposition, wherein several allegations respecting the origin of the trade mark, the use thereof by the defendant, and other matters relating to the controversy between the parties, were stated to be true upon the affiant's own knowledge. Upon the trial, he was called as a principal witness for the plaintiff; and on his cross-examination, the fact was elicited, for the purpose of impeachment, that he did not and could not actually know the truth of several averments made in his verification of the complaint, some of which were shown to be at variance with facts. The verification in question was in the English language, of which the witness, who was a Frenchman, had so little knowledge, that his testimony was necessarily given through an interpreter.

On resuming his direct examination, the witness, in answer to questions which were objected to, stated that part of the deposition was read over to him, part in English—which he could not understand—and part in French, before he verified it; that he was not capable of reading it himself; that he did not know what portions were read in the two languages respectively; and, in reply to the question, also objected to, " What kind of knowledge did you mean in the affidavit by your own knowledge?" he stated, that he " made a supposition," from circumstances which he mentioned.

The judge charged, among other things, that the defendant was liable for the sale of leather stamped with a former trade mark of the plaintiff, although at the time of the sale the latter employed exclusively a mark of a different device, and that his property in the original trade mark was not divested by discontinuing its use. Also, that the plaintiff was entitled to recover nominal damages, even if a sale was made by the

Lemoine *v.* Gauton.

plaintiff's procurement. The proof of the plaintiff's property in the trade mark in question, rested solely upon the evidence of the plaintiff's agent, in reference to which the jury were instructed as follows:

"The witness, Boscher, makes out the necessary proof, if he is to be believed. "Unless the matter of his affidavit annexed to the complaint is explained, he is not entitled to the same credit as the other witnesses. "That affidavit did not state the truth. "It is not pretended, on the part of the plaintiff, that it is true. "It is said, in explanation, that he is a foreigner, and does not understand English, especially when read to him, as it is claimed his affidavit was, and that he confounded knowledge by information, with what is known to the law as personal knowledge. "But he had no right to swear to an affidavit, the contents of which he did not know, and it is for the jury to say what degree of credit ought to be given him under the evidence bearing on that point. "If he has willfully sworn falsely in one thing, he is not to believed in any thing. "But if he has only erred in one statement, and his testimony is confirmed by other facts in the case, he may be believed, so far as he is confirmed."

Exceptions were noted to the submission to the jury of the question of credibility, under the circumstances proved, and other portions of the charge were also excepted to.

A verdict was found for six cents. A motion for a new trial, made by the defendant at special term, was denied, and an appeal was prosecuted from the decision thereon.

*Edwin W. Stoughton*, for the defendant, cited *Knott* v. *Morgan*, 2 Keen's Rep. 213, 219; Curtis on Copyright, 219; and, on the question of evidence, Cowen & Hill's Notes, part 1, p. 396; *Dunlop* v. *Patterson*, 5 Cowen, 243–6; *State* v. *Jim*, 1 Devereaux, 508; *Newell* v. *Wright*, 8 Conn. 319; *Allen* v. *Young*, 6 Monroe, 136.

*John Cochrane*, for the plaintiff.

BY THE COURT. DALY, J.—The question put to the witness, Boscher, was allowable under the circumstances. His credibility was the matter in question. The defendant sought to impeach it, by showing, on an examination of the witness in his own language, on the trial, through the means of an interpreter, that he had no positive knowledge of facts stated in an affidavit he had made in English, to be, true " of his own knowledge," and the defendant succeeded in doing so. " If it be intended," says ABBOTT, C. J., in the Queen's case, (2 Brad. & Bing. 314,) " to bring the credit of a witness into question, by proof of any thing he may have said or declared touching the case, and he admits the words or declarations imputed to him, the witness has the opportunity of giving such reason, explanation, or exculpation of his conduct, if any there be, as the particular circumstances of the transaction may happen to furnish." Now if a witness has sworn to a deposition drawn up in a language not his own, and with which he is but imperfectly acquainted, and it appears, upon his examination in his own tongue, that he has not any positive knowledge of facts stated, in the deposition, to be true of his own knowledge, I think it is perfectly competent to show, by the witness, that he did not understand the full import of the language used in the deposition, and that all that he intended to convey was, his conviction of the truth of the fact from circumstances which had come to his knowledge. I am not quite sure that even an ignorant witness, who has sworn to a deposition in his native language, might not be suffered to state, where his credibility was in question, that he had a different understanding of the language used than such as would be given to it by a court and jury; but certainly a foreign witness, but imperfectly acquainted with the English language, should be permitted to do so. The explanation of the witness, in every such case, goes to the jury for what it is worth, upon the general question of his credibility. Here the witness swore that he did not understand the English language, and several witnesses, subsequently called to the point, swore that his knowledge of it was very imperfect.

Lemoine *v.* Gauton.

He stated that he was incapable of reading the affidavit himself; that a part of it was read to him in English and a part of it in French, which part in English and which in French he could not remember. He was then asked, what kind of knowledge he meant, in the affidavit, by his own knowledge, which was the question objected to, and his answer showed that he meant simply his conviction or belief, from circumstances which had come to his knowledge, that the fact was as he had stated it to be. I think there was no error in permitting him to give the explanation.

The charge of the judge in respect to the effect to be given to Boscher's testimony came fully up to the request made of him. He called the attention of the jury to the materiality of his evidence, remarking that it made out the necessary proof of the existence of a trade mark, *if he was to be believed.* He called their attention to the fact of the affidavit, the untruth of some of the statements made by the witness in it, and the explanation given by him, and told the jury that it was for them to say what degree of credit ought to be given to him, and that if he had willfully swore false in one thing, he was not to be believed in any thing. This was going as far as the law requires, and was fully up to the defendant's request.

The fact that the plaintiff had discontinued the use of this trade mark for three years, would not deprive him of a right of action against the defendant for selling leather which was not manufactured by the plaintiff, but stamped in the same manner in which the plaintiff had formerly designated the leather manufactured by him, thus purporting to be of his manufacture, and declared by the defendant, at the time of sale, to be the genuine Lemoine calf skins. The credit and reputation which a man acquires by his care or skill in the manufacture of a particular article, is a species of property which the law recognizes and protects; and where, as a means of extending his reputation and guiding purchasers, he affixes some mark or symbol to designate that the article is of his manufacture, he is injured by the sale

Lemoine *v.* Gauton.

of an article manufactured by another, with his peculiar symbol or trade mark affixed to it. If the article is inferior to his own, he is injured in reputation; and even if it be of a similar quality and kind, its sale goes so far to diminish the sale of his own article, and thus works a pecuniary damage. The wrong and injury to the plaintiff consisted in the sale of calf skins, falsely purporting and declared to be of his manufacture; and it makes no difference whether that object was effected by counterfeiting the trade mark which he uses at present, or one that he formerly used. An injury results to him in either case.

One of the sales was shown to have been brought about by the procurement of the plaintiff's agent, and in respect to that he has no claim for damage. It is equivalent to a sale made to himself, by which he neither gains nor loses. Perhaps he would, in that case, as the judge held, be entitled to recover nominal damages, on the ground that the sale of the article in his name, being a wrongful act, would be sufficient to give a right of action. But it is not necessary to pass upon that question. It was not proved that the other sale was by his procurement, though the judge, in his charge, assumed that the plaintiff's counsel had substantially conceded the fact. The judge told the jury that they were at liberty so to find the fact, but the jury having rendered a verdict in favor of the plaintiff for nominal damages, we may, in support of the verdict, assume that they found the fact to be otherwise. The motion for a new trial should, therefore, be denied.

Order denying a new trial affirmed.